**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IRENE DVORE,                    ) | |
|                              ) | |
|        Plaintiff,          ) | |
|                              ) | |
|     v.                   ) | CASE NO.: 06-CV-3076 |
|                              ) | |
| JAMES E. CASMAY, SHELDON G.   ) | |
| ALDRIDGE; TRACY H. ALDRIDGE, SYED  ) | |
| HUMAYUN; and NORTH COMMUNITY BANK, ) | |
|                              ) | |
|        Defendants.      ) | |

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court are cross-motions for summary judgment by Defendant North Community Bank ("NCB") and Plaintiff Irene Dvore ("Plaintiff"). For the reasons set forth below, NCB's motion for summary judgment [47] is granted and Plaintiff's cross-motion for summary judgment [71] is denied.

**I.  Background**

Plaintiff filed a three-count complaint initiating this action against all Defendants on June 5, 2006. See [1]. In her Complaint, Plaintiff alleges that: (1) Defendants James E. Casmay ("Casmay"), Sheldon G. Aldridge, and Tracy H. Aldridge violated certain provisions of the Racketeer Influenced and Corrupt Organizations Acts ("RICO") (Count I); (2) Defendants NCB and Syed Humayun ("Humayun") made negligent misrepresentations to her (Count II); and (3) Defendants NCB and Humayun breached a fiduciary duty allegedly owed to Plaintiff (Count III). *Id.* The Court previously entered defaults against Defendant Casmay on September 12, 2006, and against Defendant Humayun on September 25, 2006. See [19, 23]. NCB filed a motion for summary judgment on Counts II and III. See [47]. Plaintiff subsequently filed a cross-motion

for summary judgment on those same counts against NCB on December 6, 2007. See [71]. Both motions are fully briefed and ready for decision.

## II.    Facts

### A.    Local standards on summary judgment

The Court takes the relevant facts from the parties' respective Local Rule ("L.R.") 56.1 statements.[1] The Court takes no position on whose version of disputed factual matters is true. Local Rule ("L.R.") 56.1 requires that statements of facts contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform*

---

[1] See [49] NCB's Local Rule 56.1(a)(3) Statement of Facts ("Def. SOF"); [72] , Plaintiffs' Response to NCB's Local Rule 56.1(a)(3) Statement of Facts ("Pl. Resp. SOF") and Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Pl. SOAF"); [81], NCB's Response to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Def. Resp. Pl. SOAF") and NCB's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Def. SOAF"); [86-3] Plaintiff's Response to NCB's Local Rule 56.1(b)(1)(3)(C) Statement of Additional Facts ("Pl. Resp. Def. SOAF") .

*Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response rather than in its statement of additional facts. See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at l317).

      **B.**      **Pertinent facts for purposes of cross-motions for summary judgment[2]**

      Plaintiff resides in Chicago, Illinois and has lived in the same house for almost thirty years. Def. SOF ¶ 1. NCB is an Illinois banking corporation located in Chicago, IL. *Id.* ¶ 11. Plaintiff, as co-trustee of several family trusts, has experience handling investments, including investments in deposit accounts. *Id.* ¶¶ 4-8. For example, Plaintiff has opened and closed Certificate of Deposit accounts with various banking institutions, including Builders Bank, Delaware Bank, Parkway Bank and Trust Company, LaSalle Bank, Harris Bank, CIB, North Community Bank and Charter One Bank. *Id.* ¶ 9. NCB offers certain products to customers, including deposit products such as checking accounts, savings accounts, money market accounts, and certificates of deposit. *Id.* ¶ 12.

      An NCB personal banker is responsible for serving a customer in a variety of ways, including the following: (i) responding to inquiries; (ii) assisting with the opening of accounts, including Certificate of Deposit accounts; and (iii) resolving problems with existing accounts. Pl. SOAF ¶ 1. These duties specifically include telling customers about the current rates for Certificates of Deposit ("CD"s) and asking the customer whether they want to open a CD account or place it with a financial institution. *Id.*

      In October 2002, Syed Humayun, also a defendant in this case, was employed by NCB as a personal banker at the Bank's branch located at 724 W. Diversey, Chicago, IL. Def. SOF ¶ 13. NCB considered Humayun to be a successful salesman in that he often took on many clients and

_____

[2] The Court notes that many of the statements of fact set forth in both parties' submissions are not relevant to the Court's consideration and disposition of the pending motions.

concentrated on cross-selling the Bank's products to customers. Pl. SOAF ¶ 33, McHale Dep. (Ex A.) at 35:4-19; Pl. SOAF ¶ 41. Personal bankers, such as Humayun, were evaluated on their ability to cross-sell the Bank's products as well as their ability to refer business, when the opportunity arose, both within NCB departments and to outside vendors. Pl. SOAF ¶ 33, McHale Dep. (Ex. A) at 52:12-53:9; Pl. SOAF ¶ 35. Those tasks were included in the job descriptions for personal bankers. Pl. SOAF ¶ 37.

On October 7, 2002, Humayun met with Plaintiff at the Diversey branch. Def. SOF ¶ 14. On that date, at Plaintiff's request, Humayun opened a $100,000.00 CD in the name of Plaintiff, Trustee for Minnie Dvore, No. 1919-1 10669, with an annual 3% yield on a twelve month term. *Id*. During that meeting, Plaintiff asked Humayun why interest rates were so bad on CDs. Pl. SOAF ¶ 84. In response to the question, Humayun gave Plaintiff the business card of James Casmay (another defendant in this case). *Id.* ¶ 86. Humayun also told Plaintiff that the Bank "really isn't in the CD business. We do it as a convenience for our customers." *Id.* ¶ 87, Dvore Dep. (Ex. H) at 73:21-23. The twenty-five minute meeting between Humayun and Plaintiff was the only interaction between the parties. Def. SOF ¶ 15.

By providing Casmay's business card to Plaintiff, Humayun "steered [Plaintiff] to make an investment with another financial institution, namely Century Financial." Pl. SOAF ¶ 81.[3] Plaintiff relied on NCB because "they are a viable financial institution, she assumed that they trained their people properly and she did not expect to get bad financial advice from NCB." *Id*. ¶ 88.[4] Plaintiff "was more likely to go to Century Financial because Humayun was a North

---

[3] While the extent of the "steer[ing]" is subject to interpretation based on the other disputed and undisputed statements of fact, NCB admitted ¶ 81 of Plaintiff's statement of facts for purposes of this motion.

[4] Although NCB denies Pl. SOAF ¶ 88 in its entirety, the denial is conclusory and without any evidence offered to rebut the statement, and thus improper. Therefore Plaintiff's representations at Pl. SOAF ¶ 88

Community Bank personal banker and she assumed that he knew about finances as a personal banker." *Id.* ¶ 89.[5] Plaintiff had no information to indicate that Century Financial was a fraudulent operation from its inception until the time she invested with Century Financial through Casmay. *Id.* ¶ 90.

In December, 2002, Plaintiff called Casmay and told him that she was referred to him by a personal banker at the NCB concerning CDs. *Id.* ¶ 80. Before contacting Casmay, Plaintiff conducted an inquiry on her own regarding CDs by looking through the newspaper and making some phone calls. Def. SOAF ¶ 94, Dvore Dep. (Ex. H) at 74: 17-21. On December 3, 2002, Plaintiff met with Casmay at Uptown Bank in order to purchase from Century Financial Services a $50,000.00 CD, No. 02-1224006247, with a 6% annual yield on three-year term in the name of the Rueben Dvore Family Trust. Def. SOF ¶ 17, 20. Plaintiff learned from Casmay that the CD in question would be held at Ocean Bank of Miami, FL and was FDIC-insured. *Id.* ¶¶ 18, 19. Plaintiff had no contact with Ocean Bank before making her initial investment with Century Financial. *Id.* ¶ 23. The Truth-in-Savings information sheet received by Plaintiff from Casmay stated that "Century Financial is not a depository. Deposits are insured by the Federal Deposit Insurance Corporation (FDIC) under FDIC Certificate #24156." *Id.* ¶ 21. Plaintiff's meeting with Casmay lasted about a half-hour. Def. SOAF ¶ 95. Plaintiff went through the terms of the CD with Casmay and felt comfortable about the transaction, confirming that it was FDIC-insured. *Id.* ¶ 96.

---

are deemed admitted pursuant to L.R. 56.1(b)(3)(B). See *Raymond v. Ameritech Corp.*, 2005 WL 525421, at *3 (N.D. Ill. March 4, 2005) (citing L.R. 56.1(b)(3)(B)) ("The opposing party's failure to controvert the moving party's statement of fact results in the moving party's version of the fact being admitted").

[5] Like Pl. SOAF ¶ 88, NCB denies Plaintiff's statement at ¶ 89 in its entirety. For the same reasons outlined in *supra* footnote 2, this statement is deemed admitted.

After the initial meeting with Casmay, Plaintiff made investments with Century Financial several more times. On December 23, 2002, Plaintiff met with Casmay for a second time in order to purchase an additional $50,000.00 CD, No. 02-1223006247, with an annual yield of 6% on a three-year term from Century Financial for the Rueben Dvore Family Trust. *Id.* ¶¶ 24, 25. On March 27, 2003, Plaintiff met with Casmay for a third time and purchased a $50,000.00 CD, No. 03-100838964, with an annual yield of 5.75% on a three year term, from Century Financial for the Minnie Dvore Trust. *Id.* ¶¶ 27, 28. On October 8, 2003, Plaintiff met with Casmay a fourth time and purchased a $50,000.00 CD, No. 03-100838964, with an annual yield of 6% on a three year term from Century Financial on behalf of the Minnie Dvore Trust.

After cashing out a CD at a financial institution, Plaintiff has never reinvested the amount cashed out at the financial institution in question based upon an employee referral from that financial institution for a separate financial institution. Def. SOAF ¶ 97, Dvore Dep. (Ex. H) at 62: 7-13. Plaintiff has never been "steered" by any financial institution other than NCB to make investments with another financial institution. *Id.* ¶ 98.

## III. Analysis

### A. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley,* 359 F.3d at 928.

To avoid summary judgment, the opposing party must go beyond the pleadings and "set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

### B.     The Effect of the Entry of Default against Defendant Humayun

As an initial matter, the Court addresses Plaintiff's contention that "the default judgment against Humayun entitles Plaintiff to summary judgment against NCB on a *respondeat superior* theory of liability" for both her negligent misrepresentation claim and her breach of fiduciary duty claim. Plaintiff's Response to NCB's Motion and Cross-Motion for Summary Judgment ("Pl. Br.") at 4. In support of that position, Plaintiff contends that the "default judgment" entered against Humayun means that "Humayun is deemed to have negligently advised Plaintiff to invest with Century Financial and breached his fiduciary duty while acting as an NCB banker," as Plaintiff pled in her complaint. Pl. Br. at 5. Plaintiff further contends that NCB is vicariously liable for Humayun's conduct because NCB was his employer at the time of the

incident in question.  *Id.*  Plaintiff relies on *Norfolk & W. Ry. v. Central States Trucking Co.* to support her position that a default judgment against an employee for negligent imputes liability to an employer such as NCB under a *respondeat superior* theory.  1998 WL 26175, at *4 (N.D. Ill. Jan. 15, 1998) (finding that where defendants already had removed any contention that the individual against whom default judgment was entered was acting as an employee of the employer, principles of *respondeat superior* dictated that the employer was liable for the employee's negligent acts).

The problem with Plaintiff's assertion is that a default *judgment* never was entered against Humayun, and thus this case is easily distinguishable from *Norfolk* on that basis, among others.[6]  As NCB correctly points out, the Court previously entered a default against Humayun, <u>not</u> a default judgment.  See [23] ("Motion by plaintiff Irene Dvore to entry of default against Syed Humayun is conditionally granted.").  An entry of default made under Federal Rule of Civil Procedure ("Rule") 55(a), unlike a default judgment rendered pursuant to Rule 55(b), is not a final adjudication, but rather "merely deprive[s] the defaulting defendant of his [or her] standing in court, [the] right to receive notice of the proceedings, and [the] right to present evidence at the final hearing."  *In re Uranium Litigation*, 473 F. Supp. 382, 386 (N.D. Ill. 1979); see also *Media Communications, Inc. v. Multimedia Sign-Up, Inc.*, 1999 WL 966078, at *3 (N.D. Ill. Oct. 8, 1999) (the entry of default under Rule 55(a) is "recognition of the fact that a party is in default

---

[6]  The Court further notes that, unlike in *Norfolk*, here NCB disputes whether the alleged negligent acts of Humayun related to Counts II and III occurred within the scope of Humayun's employment, which Plaintiff must establish in order to succeed under a *respondeat superior* theory.  See e.g., Def. Mem. at 3 n. 1; Def. Reply at 9.  In addition, as shown below, the entry of default does not mean that "Humayun is deemed to have negligently advised Plaintiff to invest with Century Financial and breached his fiduciary duty while acting as an NCB personal banker" as Plaintiff would like the Court to find, and thus *Norfolk's* analysis regarding the effect of a default judgment is simply inapplicable.  Therefore, at this stage of the litigation, the parties dispute both the underlying acts of Humayun upon which Plaintiff's theory of vicarious liability is premised and whether those acts fell within the scope of Humayun's employment with NCB for purposes of considering NCB's liability.

for a failure to comply with the rules" and "is an interlocutory step taken in anticipation of a final default judgment under Rule 55(b)"). And, because an entry of default under Rule 55(a) "is not a final adjudication" on the merits, "there is no *res judicata* or collateral estoppel effect from the order." *In re Uranium*, 473 F. Supp. at 386. Here, the entry of default against Humayun merely serves to deny Humayun the right to later defend his own case on the merits, but that order is not a "final adjudication" on the merits of Plaintiff's claims against him.[7]

As a result, the entry of default against Humayun has no effect on the disposition of the claims brought by Plaintiff against NCB for purposes of the cross-motions for summary judgment. Significantly. it does not preclude NCB from arguing that — or this Court from considering whether — Humayun's conduct was not negligent and that no breach of fiduciary duty occurred. Nor does it require summary judgment in Plaintiff's favor against NCB. In sum, to the extent that Plaintiff's cross-motion for summary judgment sought to impose liability against NCB solely on the basis of a *respondeat superior* theory of liability (see Pl. Br. at 15 (asking the Court to "hold Defendant [NCB] liable for the damages caused by defaulted co-defendant and former bank employee, Syed Humayun")), Plaintiff's motion is denied.

### C.  Negligent Misrepresentation

The tort of negligent misrepresentation "has essentially the same elements [as fraudulent

---

[7]  Notwithstanding *Norfolk*, the case upon which Plaintiff (mistakenly) relied, there is some question under applicable federal law regarding at what stage a default *judgment* could have been entered against Humayun in this case. The Seventh Circuit, interpreting and distinguishing a long-followed rule established by the Supreme Court in *Frow v. De La Vega*, 82 U.S. 552, (1872), has held that where *joint and several* liability exists against one or more defendants, a federal court is not precluded from entering a default judgment against one or more defendants if the procedures in Rules 55(a) and 54(b) are followed. *In re Uranium Litigation*, 617 F.2d 1248, 1258 (7th Cir. 1980). However, the Seventh Circuit went on to make clear that the rule in *Frow* — which prevents a federal court from entering a final default judgment against one defendant alone where *joint* liability may exist — still "controls in situations where the liability of one defendant necessarily depends on the liability of others." *Id.* This rule applies in order to avoid inconsistency in judgments against multiple defendants. See *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1324 (7th Cir. 1983).

misrepresentation],[8] except that the defendant's mental state is different. The defendant need not know that the statement is false. His own carelessness or negligence in ascertaining the truth will suffice for a cause of action. * * * For negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information." *Doe v. Dilling,* 228 Ill.2d 324, 360 (2008) (citing *Bd. of Educ. of City of Chicago v. A,C & S, Inc.,* 131 Ill.2d 428, 452 (1989)). The Illinois Supreme Court has recognized a duty to communicate accurate information in limited circumstances. *Brogan v. Mitchell Int'l, Inc.,* 181 Ill.2d 178, 183-184 (1998). One such circumstance pertinent to this case is a duty to avoid negligently conveying false information "where one is in the business of supplying information for the guidance of others in their business transactions." *Id.* at 184 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 89 (1982)).

In order to prevail on her negligent misrepresentation claim in this case, Plaintiff will have to prove each of the following elements: (1) NCB owes Plaintiff a duty to communicate accurate information because NCB is in the business of supplying information for the guidance of others in business transactions; (2) NCB or its agent made a false statement of material fact; (3) NCB (or its agent) was careless or negligent in ascertaining the truth of the statement; (4) NCB (or its agent) had intent to induce Plaintiff to act; (5) Plaintiff acted in justifiable reliance on the truth of the statement; and (6) damage to Plaintiff resulted from such reliance. See *Doe,* 228 Ill.2d at 342-343; see also *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.,* 125 F.3d 468, 475 n.2 (7th Cir. 1997) (citing *Bd. of Educ.,* 131 Ill.2d at 452).

---

[8]  A plaintiff must prove the following elements in a fraudulent misrepresentation cause of action:  (1) a defendant made a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance.  See *Doe,* 228 Ill.2d at 342-343.

NCB moves for summary judgment on Plaintiff's claim for negligent misrepresentation against it, asserting that undisputed facts show that Plaintiff cannot establish three of the required elements as a matter of law. First, NCB contends that Plaintiff cannot establish that NCB was engaged in the business of providing information for the guidance of others in business transactions, an element required for establishing that a duty exists for Plaintiff's negligent misrepresentation claim and for recovery of the relief requested by Plaintiff under that claim. Def. Mem. at 5-6. Second, NCB contends that Plaintiff cannot establish that she justifiably relied on the information she received from Humayun that Century Financial offered FDIC-insured Certificates of Deposit, and therefore her claim fails. *Id.* at 6-7. Finally, NCB contends that Plaintiff is unable to establish NCB's intent to induce Plaintiff to act on the information in question. *Id.* at 8. Plaintiff counters in her cross-motion for summary judgment that the undisputed facts prove each element for her negligent misrepresentation claim, making summary judgment in her favor appropriate. Pl. Br. at 12-13.

The Court first addresses NCB's contention that Plaintiff cannot establish that NCB was engaged in the business of providing information for the guidance of others in business transactions, which is outcome-determinative not only of whether Plaintiff may seek the relief requested for this claim (the focus of NCB's argument), but also of whether a duty to communicate accurate information exists in the first place. Under Illinois law, whether a defendant owes the plaintiff a duty is a question of law to be decided by the Court. See *Rhodes v. Ill. Cent. Gulf R.R.*, 172 Ill. 2d 213, 216 (1996). If Plaintiff is unable to show that NCB had duty to communicate accurate information to her because it was in the business of supplying information for the guidance of others in their business transactions, then her negligent representation claim necessarily fails as a matter of law.

If NCB is not in the business of supplying information for the guidance others, Plaintiff's claim also fails because the recovery she seeks is otherwise barred under Illinois law. NCB is correct in pointing out that in general, purely economic losses are not recoverable in tort actions in Illinois, absent application of one of several limited exceptions. See *Moorman Mfg. Corp. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982). The general rule established in *Moorman* is often referred to as the economic loss doctrine. See, *e.g.*, *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 20 (1st Dist. 1999). However, in *Moorman* the Illinois Supreme Court recognized several exceptions to this rule, finding that economic losses are recoverable in certain previously enumerated exceptions including, as applicable here, negligent misrepresentation cases where the defendant was "in the business of supplying information for the guidance of others in their business transactions."[9] *Id.* (citing *Rozny v. Marnul*, 43 Ill. 2d 54 (1969)); see also *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 168 (1997) (citations omitted) (reiterating that the negligent misrepresentation exception to the economic loss doctrine set forth in *Moorman* focuses on whether the defendant is "in the business of supplying information for the guidance of others, or whether the information is merely ancillary to the sale or in connection with the sale of merchandise or other matter").

The threshold question of whether NCB was "in the business of supplying information for the guidance of others in their business transactions" thus is relevant both to establishing (i) that a duty exists in this case and (ii) that the recovery requested here — actual damages for the $200,000.00 in lost investments through Century Financial and litigation costs (see Pl. Compl. ¶

---

[9]  The Illinois Supreme Court also has recognized exceptions to the economic loss doctrine where (1) the plaintiff sustained damage in the form of physical injury or property damage resulting from a sudden or dangerous occurrence, and (2) where plaintiff's damages are proximately caused by a defendant's intentional, false representation (*i.e.*, fraud). *Moorman*, 91 Ill. 2d at 86, 88-89; see also *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 337-338 (2006) (confirming that the only exceptions to the economic loss doctrine recognized under Illinois law are the three enumerated in *Moorman*).

48) — falls within the negligent representation exception to the *Moorman* bar. The Seventh Circuit has stressed that in resolving that question, a district court must conduct a "precise, case-specific inquiry." *Orix*, 125 F.3d at 475 (citing *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361, 364 (7th Cir. 1989)). Given the nature of that inquiry, prior decisions may be illuminating in setting forth the broad legal principles that guide the Court, but absent an uncanny repetition of a fact pattern, the resolution of the legal question in each case frequently will turn on circumstances that are peculiar to that case.

Here, the broad legal principles are reasonably well established. In order to determine that a defendant is in the business of supplying information: (i) the defendant must supply the information in the course of his or her business, and (ii) the information must be supplied for the guidance of others in their business transactions. See *Fireman*, 176 Ill. 2d at 165. And, in undertaking that analysis, the Court must focus on "the nature of the information and its relation to the particular type of business conducted." *Orix*, 125 F.3d at 475 (citations omitted).

Attempts to further define an enterprise "in the business of supplying information for the guidance of others in their business transactions" under Illinois law not surprisingly have lacked precision, focusing instead on broad efforts at classification, with the recognition that there will be many close, difficult determinations to be made on a case-by-case basis. The Illinois Appellate Court has observed that it may be useful to "envision a continuum [of enterprises] with pure information providers at one end and pure tangible good providers at the others." *Tolan*, 308 Ill. App. 3d at 28. At the pure information end are examples such as accountants, attorneys, insurance brokers, stockbrokers, real estate brokers, termite inspectors, and environmental assessors. *Id.* (collecting cases). With pure information providers, the product is information itself. *Id.* "In other words, the end product is the ideas, not the documents or other objects into

which the ideas are incorporated." *Id.* (citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 163 (1994)). At the tangible product end of the continuum are examples such as manufacturers of computers and software, among other products, and sellers of crop sprayers. *Id.* (collecting cases). With tangible product providers, "while the entity may exchange information, the information relates only to the goods or services, and thus, is 'supplied incidental to the sale of the product.'" *Id.* (citing *Gen. Elec. Capital*, *Corp. v. Equifax Servs.*, 797 F. Supp. 1432, 1442 (N.D. Ill. 1992)).

In between the pure information and the tangible product ends of the spectrum are the "difficult cases" which can go either way, such as those involving life insurance companies, banks and financial service providers, and financing inspectors. *Tolan*, 308 Ill. App. 3d at 28 (collecting cases). This "in between" category consists of businesses that supply tangible goods (or non-informational goods or services) as well as information. *Id.* (citing *Rankow*, 870 F.2d at 364). "The critical question for businesses in this category is whether the information is an important part of the product offered. These businesses will be deemed to be in the business of supplying information if the information furnished along with the non-informational good or services is central to the business transactions." *Id.* (quoting *Gen. Elec. Capital*, 797 F. Supp. at 1443).

NCB, as a retail-level bank, falls into the "in between" category because it arguably provides both tangible (non-informational) products *and* information. As the Seventh Circuit delineated in *Rankow*, "financial services such as those provided by banks and stock brokers present a particularly difficult problem, because there is a very thin line between an exchange of information about finances and actual financial transactions." *Rankow*, 870 F.2d at 365. In light of this difficulty, "it is particularly important * * * to examine the particular information and

transactions involved case by case." *Id*. Thus, the focus is on "the nature of the information and its relation to the particular type of business conducted." *Orix*, 125 F.3d at 475 (citations omitted).

The relevant inquiry, therefore, becomes whether the information supplied by Humayun to Plaintiff was "central" or "merely incidental" to the business transaction – here, the purchase of a CD from Humayun.[10] Here, Plaintiff met with Humayun for no more than thirty minutes. Def. SOF ¶ 15. During that meeting, a business transaction took place — Humayun assisted Plaintiff in purchasing a CD from NCB. At some point during the course of the transaction, Plaintiff inquired about why interest rates for CDs were so bad. Pl. SOAF ¶ 84. In response, Humayun handed her a business card for James Casmay and remarked that NCB was not really in the CD business. *Id*. ¶ 86. Plaintiff still purchased the CD from NCB with the assistance of Humayun. Def. SOF ¶ 15. Thus the nature of the information exchanged was a referral — the name and the contact information of Casmay — and did not touch upon information that was central to any business transaction, such as actual terms or interest rates for CDs. Significantly, there is no evidence that Humayun made any representations about rates, terms, or services offered by Casmay, and it is undisputed that Plaintiff had purchased CDs on several prior occasions from several financial institutions. See Def. SOF ¶¶ 4-9.

The Court finds that the exchanged information at issue in this case is clearly distinguishable from the information supplied in cases involving banks such as *Rankow* and *Guaranty Bank* (upon which *Rankow* relies). For example, in *Rankow*, the defendant supplied information regarding pricing dates for purchases related to a stock purchase plan to plan

---

[10] For purposes of considering whether NCB was in the business of supplying information for the guidance of others in this case, the Court presumes for the moment that Plaintiff could establish that Humayun's conduct was within the scope of his employment, without making an actual determination that Plaintiff has established on summary judgment that *respondeat superior* liability attaches for this claim.

participants that differed from the plan's prospectus. 870 F.2d at 358. Plaintiffs claimed they relied on the information supplied and subsequently incurred losses to cover a difference in stock price. *Id.* The Seventh Circuit concluded that the information supplied in relation to the stock plan pricing dates was central to the bank's business insofar as the bank offered the plan as part of its services. *Id.* at 365 & n.11.

In *Guaranty Bank*, the information supplied consisted of a letter responding to an inquiry from the defendant about whether an individual from the bank with whom the defendant had negotiated a lease was an authorized agent of the bank. *Guaranty Bank & Trust Co. v. Reyna*, 51 Ill. App. 2d 412, 422-423 (1st Dist. 1964). The bank's response letter indicated that the person with whom the plaintiff had negotiated was <u>not</u> an authorized agent of the bank. *Id.* at 419. Plaintiff relied on that information and considered the lease void, though it was later discovered that the individual in question was in fact a valid agent and the bank later sought damages from the defendant for breach of the terms of the lease. *Id.* at 422. The court concluded that "the information supplied by the bank was in the course of its business in response to an inquiry by [the defendant]. The information was supplied to guide [the defendant] in the conduct of a serious business matter * * *," namely, her decision to consider the lease void because she believed, based on the letter, that the leased had never been validly entered into. *Id.* Thus, in *Guaranty Bank*, the information supplied—the letter—was central to the lease transaction between the bank and the defendant.

In both *Rankow* and *Guaranty Bank*, the determination that the banks were in the business of supplying information for the guidance of others turned on the nature of the information as it related to the transactions at issue. Here, Humayun's referral was incidental to both CD transactions – the transaction with NCB that essentially was complete at the time that

Humayun provided Casmay's business card and the transaction that Plaintiff concluded with Casmay two months later. Humayun's referral of Plaintiff to another banking institution through the provision of a business card, and little else, was not "any important part of the product" nor was it "central to the business transaction." *Tolan*, 308 Ill. App. 3d at 28.

Mindful of the Seventh Circuit's guidance that the question of duty in cases like this one turns on a "precise, case-specific inquiry" (*Rankow*, 870 F.2d at 361), the Court adds that it may well have found a duty if the facts adduced at the summary judgment stage were different. If, for example, Humayun had made affirmative representations about the rates, terms, reliability, and/or service provided by Casmay – either voluntarily or in response to further questions from Plaintiff – such representations may have constituted "an important part of the product provided by the seller." *Rankow*, 870 F.2d at 365. The duty analysis may have come out differently as well if there was any evidence adduced that Humayun had "full knowledge" that Plaintiff would use the information that he provided. *Id*. (discussing *Duchossois Indus. v. Stelloh*, 1988 WL 2794 (N.D. Ill. Jan. 13, 1988)). But the record shows no such knowledge. In fact, Plaintiff shopped around after receiving the business card from Humayun and did not even contact Casmay for nearly two months after her one-time conversation with Humayun. See, *e.g.*, Def. SOAF ¶ 94.

In short, the facts of this case are much closer to the facts of cases applying Illinois law in which courts have found as a matter of law that the defendants were *not* engaged in the business of supplying information for the guidance of others. For example, in *Canel v. Lincoln National Bank*, 1998 WL 1760544, at *10 (N.D. Ill. Aug. 6, 1998), the court reasoned that summary judgment should be granted to a defendant who made a "one-time disclosure of information in an attempt to comply with federal securities law," and thus was not in the business of supplying

information for the benefit of the plaintiffs.  Similarly, in *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 335-36 (2006), the Illinois Supreme Court held that a title insurer is not in the business of supplying information when it issues a title commitment or a policy of title insurance, noting that any guarantee concerning the performance of a title search would be "counterintuitive" since the purpose of the title commitment is to set forth the terms for issuing the title insurance policy, which in turn exists to insure against the risk of undiscovered defects, liens, and encumbrances.  Here, too, it would be "counterintuitive" to find that Humayun was providing information on the purchase of CDs for the benefit of Plaintiff where it is undisputed that (i) Humayun simply handed Plaintiff a business card for James Casmay and remarked that NCB "really isn't in the CD business," (ii) Plaintiff was an experienced purchaser of CDs who had made CD purchases on several occasions from several banks at the time that she obtained Casmay's business card from Humayun, and (iii) Plaintiff went over the terms of the CD that she purchased from Casmay in some detail before completing the purchase.  See Pl. SOAF ¶¶ 86-87; Def. SOF ¶¶4-9; Def. SOAF ¶ 96.

For all of the foregoing reasons, the Court concludes that NCB is not in the business of supplying information in the "precise, case-specific" circumstances of this case.  See *Rankow*, 870 F.2d at 361.  And, given this Court's conclusion that NCB was not in the business of supplying information when it, through its employee, offered Plaintiff a referral to another banking institution, Plaintiff cannot establish that a duty to communicate accurate information exists in this case or that the negligent misrepresentation exception to *Moorman's* economic loss doctrine applies.  Accordingly, summary judgment must be granted to NCB, and the Court need not consider NCB's additional arguments that Plaintiff failed to show justifiable reliance or intent on the part of NCB.  See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (summary

judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). In addition, for the same reasons, Plaintiff's cross-motion for summary judgment on her negligent misrepresentation claim against NCB is denied.

### C. Breach of Fiduciary Duty

In order to establish that NCB breached a fiduciary duty in this case, Plaintiff must establish the following: (1) a fiduciary duty between NCB and Plaintiff exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which Plaintiff complains. See *Neade v. Portes*, 293 Ill. 2d 433, 444 (2000). To establish liability against NCB on this claim because of the alleged acts of Humayun, Plaintiff must also show that NCB is vicariously liable for the acts of Humayun that underlie Plaintiff's claim for breach of fiduciary duty by showing those acts were taken within the scope of Humayun's employment. See, *e.g.*, *Mitchell v. Norman James Contr. Co.*, 291 Ill. App. 3d 927, 932-33 (1st Dist. 1997) ("It is well-settled that under the doctrine of *respondeat superior*, an employer may be liable for the negligent, willful, malicious, or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.").

NCB moves for summary judgment, contending that there is no legal basis to support Plaintiff's breach of fiduciary claim against it because no fiduciary duty exists as a matter of law in this case. Def. Mem. at 9. Plaintiff counters in her cross-motion for summary judgment that NCB's fiduciary duty arose when, through its employee Humayun, it offered "investment advice on which certificates of deposit to purchase." Pl. Br. at 15; Pl. Reply at 2. Plaintiff further contends that NCB breached this fiduciary duty Plaintiff when it "discovered after its own fraud

investigation that Dvore [had] become the victim of a possible 'ponzi scheme'" and failed to inform Plaintiff of it. Pl. Br. at 14; Pl. Reply at 2.

Under Illinois law, whether a defendant owes the plaintiff a duty is a question of law to be decided by the Court. See *Rhodes v. Ill. Cent. Gulf R.R.*, 172 Ill. 2d 213, 216 (1996). The question on summary judgment is whether the relationship between Plaintiff and NCB gave rise to a fiduciary duty on the part of NCB.[11] In Illinois, a fiduciary relationship between a bank and a depositor or customer does not exist as a matter of law. See *Miller v. American Nat'l Bank and Trust Co. of Chicago*, 4 F.2d 518, 520 (7th Cir. 1993) (citing *Mijatovich v. Columbia Sav. & Loan Ass'n*, 168 Ill. App. 3d 313, 316 (1st Dist. 1988)) (under Illinois law, "a bank generally owes no fiduciary duty to its depositors"). Nor does a fiduciary duty exist as a matter of law between an investment advisor and a client. See *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (recognizing two examples where fiduciary duties are imposed as a matter of law in Illinois (lawyer-client, guardian-ward), and explaining that "the relation between an investment advisor and the people he advises is not a third"); see also *Waldock v. M.J. Select Global, Ltd.*, 2005 WL 297788895, at *15 (N.D. Ill. Nov. 7, 2005) (finding that a fiduciary duty did not exist between an investment advisor and his clients based on the allegations in the complaint). Outside of the lawyer-client and guardian-ward relationships already recognized, the only other situation where a fiduciary relationship arises as a matter of law is between a principal and his or her agent. *Id.*

However, fiduciary duties sometimes are imposed on an *ad hoc* basis. *Id.* (citing *Klass v. Hallas*, 16 Ill. 2d 161, 164 (1959); *Carey Elec. Contracting, Inc. v. First Nat'l Bank*, 74 Ill.

---

[11] As with the negligent representation claim, for purposes of considering whether a fiduciary duty exists in this case, the Court presumes at this stage of the case that Plaintiff could establish that Humayun was acting within the scope of his employment, without making an actual determination that Plaintiff has established on summary judgment that *respondeat superior* liability attaches to NCB.

App. 3d 233, 236 (1979)).  A fiduciary relation not presumed by law arises "only if 'one person has reposed trust and confidence in another who thereby gains influence and superiority over the other.'"  *Id.* (citing *Amendola v. Bayer,* 907 F.2d 760, 763 (7th Cir. 1990)*; see also Ray v. Winter*, 67 Ill. 2d 296, 304 (1977)); *Obras Civiles, S.A. v. ADM Securities, Inc.*, 32 F. Supp. 2d 1018, 1024 (N.D. Ill. 2005) (finding that no fiduciary duty existed between a bank and its client and the relationship was merely contractual).  Such a relation must be shown "by proof so clear and convincing, so strong, unequivocal, and unmistaken that it leads to only one conclusion." *Carey Elec.*, 74 Ill. App. 3d at 238; see also *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 618 (5th Dist. 1992) (if a fiduciary duty is not presumed as a matter of law, "facts from with a fiduciary duty arises must be pleaded and proved by clear and convincing evidence").  The degree of trust and confidence can be established by the following factors, if applicable:  degree of kinship, age disparity, mental condition, education, business experience between the parties, and the extent of the reliance.  *Magna Bank*, 237 Ill. App. 3d at 619 (citations omitted).

Plaintiff attempts to characterize the single interaction between Defendant Humayun and herself as one in which Humayun provided "investment advice."  But the relationship between the parties here was not one of an investment/financial advisor and a client in the traditional sense, where the client establishes a long-term relationship over time with the advisor in order to assist with his or her financial portfolio.  The undisputed facts here show that Plaintiff was not seeking investment advice in any meaningful sense, but merely was shopping for the "best" product, *i.e.* the best CD rates and terms.  See, *e.g.*, Pl. SOAF ¶ 84; Def. SOF ¶ 9; Def. SOAF ¶ 94.  Thus, the circumstances here thus are more akin to a bank-depositor relationship where the customer is using relatively routine banking services rather than a long-term investor-advisor

relationship. See *Obras*, 32 F. Supp. 2d at 1024. However that is a distinction without a difference for purposes of considering whether a fiduciary duty exists, because neither Plaintiff's characterization of the relationship, nor any other argument offered by Plaintiff, supports a finding that such a duty is presumed as a matter of law. See *Burdett*, 957 F.2d at 1381. No reading of the undisputed facts gives rise to an agent-principal, lawyer-client, or guardian-ward fiduciary relationship. See *id.* Therefore, Plaintiff must be able to prove by clear and convincing evidence that "[Plaintiff] reposed trust and confidence in [NCB through its employee Humayun] who thereby gain[ed] influence and superiority over [Plaintiff]." *Id.*

Plaintiff simply fails to meet that standard. At best, Plaintiff has shown that she believed she was receiving general financial advice from Humayun on a one-time basis about various interest rates for CDs including a recommendation to consider another bank. See Pl. SOAF ¶ 81 (Humayun "steered [Plaintiff] to make an investment with another financial institution, namely Century Financial."); see also Pl. SOAF ¶¶ 88, 89. Indeed, the "steer[ing]" of Plaintiff consisted solely of handing her a business card and suggesting that she contact Casmay because NCB was not really in the CD business. Plaintiff plainly has not shown that she placed all of her "trust and confidence" in Humayun to, for example, make her investment choices for her. See, *e.g.*, *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs.*, 823 F.2d 171, 173 (7th Cir. 1987) (only a commodities broker operating a discretionary account in which the broker determines which investments to make is a fiduciary).

Indeed, the facts show quite the opposite. Although Plaintiff took the business card from Humayun, she waited two months, did her own research, and then chose to invest with Century Financial after meeting with Casmay. See Pl. SOAF ¶ 80; Def. SOAF ¶¶ 94-96. Plaintiff does not establish that Plaintiff had any other interaction with Humayun that would lead to the type of

relationship in which Plaintiff could be said to have placed her trust and confidence in him. For example, the record is devoid of any evidence that Plaintiff asked Humayun questions about Casmay, or that Plaintiff followed up with Humayun after Plaintiff met with Casmay to seek further input as to whether Plaintiff should invest with Casmay. The facts simply fail to support any theory under which Humayun (and therefore NCB if Plaintiff could show that that *respondeat superior* principles apply) "gained influence and superiority" over Plaintiff and her investment choices, given that she met with him only once. The fact that Plaintiff undertook similar transactions at other banks further belies any finding that Plaintiff placed her "trust and confidence" in NCB (or Humayun) in particular. See Def. SOF ¶ 12. At best, Plaintiff entered not into a fiduciary relationship, but a contractual one with NCB, through its employee Humayun, when she purchased a CD during her half-hour meeting with Humayun. See *Obras*, 32 F. Supp. 2d at 1024.

Plaintiff fails to provide clear and convincing evidence that a fiduciary relationship existed between herself and NCB based upon the actions of Humayun. Therefore, because Plaintiff cannot establish an element essential of her claim for breach of fiduciary duty, that claim must fail and summary judgment in favor of NCB is appropriate. See *Celotex*, 477 U.S. at, 322 (summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). NCB's motion for summary judgment with respect to Plaintiff's fiduciary duty claim against it is granted and consequently, Plaintiff's cross-motion for summary judgment is denied.

**IV.    Conclusion**

NCB's motion for summary judgment [47] on the negligent representation and breach of fiduciary duty claims brought against it is granted.   Plaintiff's cross-motion for summary judgment [71] on those same counts against NCB is consequently denied.

Dated:  September 29, 2008

_____
Robert M. Dow, Jr.
United States District Judge