# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IRENE DVORE, ) | |
|     Plaintiff, ) | |
| ) | Case No.: 06-CV-3076 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JAMES E. CASMAY, SHELDON G. ) | |
| ALDRIDGE, TRACY H. ALDRIDGE, SYED ) | |
| HUMAYUN, AND NORTH COMMUNITY ) | |
| BANK, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The Court has before it Plaintiff's motion for default judgment and prove up as to the remaining Defendants in the case [91], as well as Plaintiff's prove-up materials [93] and supplemental brief [95] discussing the extent to which a default judgment is appropriate against Defendant Humayun. For the reasons stated more fully below, the Court enters an order of default against Defendants Sheldon Aldridge and Tracy Aldridge and grants in part and denies in part Plaintiff's motion for default judgment [91]. The Court enters default judgments (i) against Defendants Sheldon Aldridge, Tracy Aldridge, and James Casmay, jointly and severally, on Count I in the amount of $600,000 and (ii) against Defendant Syed Humayun on Count II in the amount of $200,000. The Court declines to award punitive damages against Defendant Humayun and dismisses Count III of the complaint against Humayun. Within fourteen days of the entry of this order, Plaintiff may prove-up attorneys fees to which she may be entitled under RICO.

**I.     Background**

Plaintiff filed a three-count complaint [1] on June 5, 2006. In her Complaint, Plaintiff alleged that: (1) Defendants James E. Casmay, Sheldon G. Aldridge, and Tracy H. Aldridge violated certain provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I); (2) Defendants North Community Bank ("NCB") and Syed Humayun made negligent misrepresentations to Plaintiff (Count II); and (3) Defendants NCB and Humayun breached a fiduciary duty allegedly owed to Plaintiff (Count III). *Id.* An order of default [19] was entered against Defendant Casmay on September 12, 2006, and a conditional order of default [23] was entered against Defendant Humayun on September 25, 2006. Later in 2006, Plaintiff filed executed returns of service as to Defendants Tracy Aldridge and Sheldon Aldridge [25, 31]. Neither of the Aldridges have appeared, answered the complaint, or otherwise participated in this case in the more than two years since they were served with summons, but no order of default has been entered as to the Aldridges. Only NCB appeared and defended itself in this action. This Court previously entered an order granting summary judgment [90] in favor of NCB on both counts of the complaint directed at NCB.

After the Court issued its ruling on NCB's summary judgment motion, Plaintiff filed a motion for default judgment and prove up [91] as to the remaining Defendants in the case. In that motion, Plaintiff seeks entry of judgment against Defendants Casmay, Tracy Aldridge, and Sheldon Aldridge, jointly and severally, in the amount of $600,000 (reflecting an award of $200,000, trebled under RICO), plus attorneys fees and costs. Plaintiff also seeks entry of judgment against Defendant Humayun in the amount of $200,000, plus an award of $600,000 in punitive damages against Humayun.

At the Court's request, Plaintiff filed a supplement brief addressing the applicability of the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552 (1872), and its progeny to the motion for default judgment against Defendant Humayun, a former employee of NCB. As explained below, after careful consideration, the Court concludes that the rationale enunciated in *Frow* (as later interpreted by the Seventh Circuit) does not prevent the entry of a default judgment against Humayun as to Count II, but does bar the entry of a default judgment against him on Count III of the complaint. Moreover, even if *Frow* did not bar the entry of a default judgment on Count III, that claim clearly lacks merit, making dismissal appropriate in any event.

## II. Analysis

### A. Default Judgments Against Casmay and the Aldridges

On September 12, 2006, an order of default [19] was entered against Defendant Casmay. More than two years after having been properly served [25, 31], Defendants Tracy Aldridge and Sheldon Aldridge have failed to appear. The Court therefore enters an order of default against the two Aldridge defendants. In addition, consistent with Plaintiff's motion for default judgment and prove-up materials [91], the Court now enters a default judgment against Defendants Casmay, Tracy Aldridge, and Sheldon Aldridge with respect to Count I of the complaint.

Plaintiff's complaint [1] requests both treble damages and attorneys fees. Both are available under the RICO statute. 18 U.S.C. § 1964(c); *cf. Jones v. Phipps*, 39 F.3d 158, 160-61, 166 (7th Cir. 1994) (upholding a default judgment in which damages had been trebled under RICO). Plaintiff's prove-up [94] materials state that Plaintiff purchased four certificates of deposits from Casmay for a total of $200,000. See Pl.'s Prove-Up Materials ¶¶ 18-24, 31, 46, 60 (describing the amounts and terms of the certificates of deposit, as well as the overall amount invested and requested); see also Pl.'s Mem. Supp. Summ. J. [48-4] ex. 3 at 5-16. Under 18

U.S.C. § 1964, the amount of damages is trebled, for a total of $600,000, to be awarded jointly and severally as to Casmay and both Aldridges.

Plaintiff has represented to the Court that she will provide prove up materials regarding attorneys fees. The Court directs Plaintiff to do so within fourteen days of the date of this order.

### B. Default Judgment Against Humayun

#### 1. The *Frow* Rule

By way of background, the Supreme Court's decision in *Frow* involved the entry of a default judgment against one defendant and a judgment on the merits in favor of the non-defaulting defendants. The plaintiff in that case alleged that eight defendants conspired to defraud him out of a tract of land. One of the defendants, Frow, defaulted and a judgment was entered against him; the other defendants won on the merits. *Frow*, 82 U.S. at 553. The Court held that entering a default judgment against Frow was inconsistent with a ruling in favor of the non-defaulting defendants. *Id.* at 554 ("Such a state of things is unseemly and absurd, as well as unauthorized by law").

A small handful of Seventh Circuit opinions have applied *Frow* and described its contours since the advent of the Federal Rules of Civil Procedure. The first Seventh Circuit case to do so was *In re Uranium Antitrust Litigation*, 617 F.2d 1248 (7th Cir. 1980), in which the court held that *Frow* remains good law "[t]o the extent that it holds that there cannot be inconsistent adjudications as to joint liability or as to a single res in controversy." *Id.* at 1257. The Seventh Circuit went on to state that "[w]e view *Frow* as limited to exclusively joint liability claims or situations where there is a single res in controversy." *Id.* at n. 40. In *In re Uranium*, the Seventh Circuit found that *Frow* did not apply where joint and several liability was alleged because a finding against one defendant logically could be consistent with a finding in favor of

4

another. *Id.* at 1257 (explaining that joint and several liability under Section 1 of the Sherman Act "is potentially 'several' as well as 'joint'").

Given the *In re Uranium* Court's statement that *Frow* applies only in joint liability claims or in actions involving the same property, it is important to flesh out the court's comparison of joint liability, where the *Frow* rule may be implicated, with several liability, where the *Frow* rule is not implicated. The Seventh Circuit explains that

> [j]oint or common liability arises when a tortious act is committed by several persons acting in concert * * *. A successful plaintiff may look to any one of the defendants for full satisfaction of the damage award. Several or independent liability, on the other hand, arises when one defendant is found to have committed a tort without the aid of other defendants. A finding of liability as to one defendant is consistent with a finding of no liability as to the others, *so long as there is no relationship between the parties requiring vicarious liability*.

*Id.* (emphasis added). The final sentence is important for what it says about *Frow* in the context of vicarious liability, a basis of recovery not at issue in *Frow* or in *In re Uranium*. The logical extension of that final sentence is as follows: if there is a relationship between the parties that requires vicarious liability, then a finding of liability as to one defendant is *inconsistent* with a finding of no liability as to the others.[1] In other words, the *In re Uranium* Court indicated, if only tacitly, that the concerns animating *Frow* may be present in vicarious liability cases. *Id.*; but see *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1006-08 (N.D. Cal. 2001) (collecting cases and authorities, and contrasting the Seventh Circuit's jurisprudence with courts that have applied *Frow* more broadly). That makes sense. After all, joint liability is premised on the notion that coordinated activities between multiple parties "render[s] each responsible for the conduct of the others on the familiar grounds of mutual agency or vicarious

---

[1] Logically, the last sentence of the block quoted text can be restructured as: if there is no relationship between the parties requiring vicarious liability, then a finding of liability as to one defendant is consistent with a finding of no liability as to the others. And the contrapositive of that sentence is: if a finding of liability as to one defendant is *inconsistent* with a finding of no liability as to the others, then there is a relationship between the parties requiring vicarious liability.

5

liability." Richard A. Epstein, *Torts* § 9.1 at 222 (1999) (discussing joint liability in the context of intentional harm) (citation omitted).

Subsequent Seventh Circuit cases suggest the correctness of the analysis above with respect to vicarious liability claims—again, if only tacitly. In *Douglas v. Metro Rental Services, Inc.*, 827 F.2d 252 (7th Cir. 1987), the court held in a Fair Housing Act discrimination case that a default judgment against a corporation was not inconsistent with a jury verdict in favor of that corporation's president. In reaching its conclusion, the Court reasoned that the defendants were not alleged to have been jointly liable. *Id.* at 255. As to the argument that the judgments were logically inconsistent, the court acknowledged "some logic to that argument," but "agree[d] with the magistrate that the two judgments [were] not necessarily inconsistent." *Id.* Although the defaulting defendant's absence from the case meant that the court could only "speculate," the court noted that it was possible that others were involved in the discrimination. *Id.* (". . . Metro caused these problems by defaulting, and cannot now take advantage of the judgment in favor of its president.").

In the course of remanding a third case, the Seventh Circuit provided additional guidance on the *Frow* rule, discussing not only the nature of liability involved (joint versus several) but also the degree of logical inconsistency. *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 811-12 (7th Cir. 1987) (stating, in the context of the case, that it was "not clear" that an affirmative defense should "be applied for the benefit of non-answering defendants"). To be sure, neither *Marshall & Ilsley Trust Co.* nor *Douglas* stands for the proposition that the nature of liability is irrelevant to the *Frow* analysis. Yet, the discussion in the *Douglas* case in particular suggests that where vicarious liability is at issue, courts should ensure that a default judgment is not logically inconsistent with a judgment in favor of another defendant.

### 2. Count II (Negligent Misrepresentation)

Given the context above, the Court now turns to the question at hand. In Plaintiff's complaint, Count II alleges that Humayun and NCB were liable for negligent misrepresentation. In a Summary Judgment Order dated September 29, 2008 [90], this Court concluded that NCB was not in the business of supplying information for the guidance of others in business transactions. Therefore, NCB had no duty to communicate accurate information to Plaintiff, and Plaintiff's claim failed. Summ. J. Order at 18. The Court presumed for purposes of its analysis that Plaintiff could have established that NCB was vicariously liable for Humayun's actions. Summ. J. Order at 15 n. 8. Indeed, had liability been imposed, it would have been based on *respondeat superior*.

If *In re Uranium* stands for the proposition that *Frow* only applies where the complaint alleges activity based on joint liability, then this matter is easily dispensed with: because NCB's liability would have been based on *respondeat superior*, the *Frow* rule would not bar the entry of a default judgment. See *In re Uranium*, 617 F.2d at 1257 n. 40. And although vicarious liability can at least in some cases be conceived of as a form of joint liability, c*f. Reed v. Bascon*, 124 Ill.2d 386, 397 (1988) (reasoning that vicarious liability in a medical malpractice action would be appropriate where doctors were "jointly employed or engaged in concerted action"), it is not the sort of joint liability at issue in *Frow* which arose by joint conduct. See *also In re Uranium*, 617 F.2d at 1257 (stating that joint liability arises "when a tortious act is committed by several persons acting in concert"). In contrast, were NCB held to have been vicariously liable for Humayun's activities, it would have been based on the *relationship* between the defendants. See *Bagent v. Blessing Care Corp.*, 224 Ill.2d 154, 163-64 (2007) (describing vicarious liability based on *respondeat superior*).

Moreover, even if this Court's discussion of the Seventh Circuit's teachings (see above) correctly concludes that the *Frow* rule may bar the entry of a default judgment in at least some cases where vicarious liability is alleged, a default judgment remains appropriate with respect to Count II. The rationale for the *Frow* rule is lacking when "different results as to different parties are not logically inconsistent or contradictory." *In re Uranium*, 617 F.2d at 1257. Plaintiff correctly has pointed out in her "Supplemental Brief on the *Frow* Issue" [95] that Humayun may have been running a "freelance investment counseling service from his bank cubicle." *Id.* at 2. Like the Seventh Circuit in *Douglas*, this Court can only speculate because Humayun has failed to appear, and the Plaintiff should not be punished for the dearth of evidence. The Court cannot conduct the case-by-case analysis necessary for determining whether Humayun was himself in the business of supplying information. See, *e.g.*, *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997). In any event, Humayun "caused these problems by defaulting, and cannot now take advantage of the judgment in favor of" NCB. *Douglas*, 827 F.2d at 255.

The analysis is not altered merely because the discussion in the Summary Judgment Order focused on Humayun's conduct in analyzing whether NCB had a duty to communicate accurate information. Had Plaintiff been allowed to conduct discovery, she might have found useful evidence to argue that Humayun was operating his own business outside the scope of his employment with NCB. It may be unlikely that Plaintiff would have found such evidence, but the Supreme Court in *Frow* sought to thwart an "absurdity," 82 U.S. at 554, not an unlikelihood. Therefore, the Court concludes that *Frow* does not bar the entry of a default judgment against Humayun with respect to Count II.

### 3. Count III (Breach of Fiduciary Duty)

The Summary Judgment Order also granted NCB's motion for summary judgment as to Count III of the complaint (breach of fiduciary duty). As with Count II, NCB would have been liable based on *respondeat superior*, and as with Count II, this Court's analysis in the Summary Judgment Order centered on the conduct of Humayun. Summ. J. Order at 19; *id.* at 21-23. That is where the similarities end: a default judgment against Humayun with respect to Count III would be inconsistent with this court's finding that NCB bears no liability on the same count. Therefore, the entry of a default judgment is barred by the *Frow* rule and Count III is dismissed with respect to Humayun. Even if *Frow* does not apply, Count III is dismissed with respect to Humayun because Plaintiff's claim clearly lacks merit.

As discussed at greater length in the Summary Judgment Order, Illinois law imposes a heavy burden on one seeking to establish the existence of a fiduciary relationship in a case such as this. The evidence of a fiduciary relationship must be shown "by proof so clear and convincing, so strong, unequivocal, and unmistaken that it leads to only one conclusion." *Cary Elec. Contracting, Inc. v. First Nat. Bank of Elgin*, 74 Ill.App.3d 233, 238 (5th Dist. 1992) (citation omitted); see also *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (no fiduciary duty as a matter of law between an investment advisor and a client). The degree of trust and confidence required to demonstrate the presence of a fiduciary relationship can be established by degree of kinship, age disparity, mental condition, education, business experience between the parties, and the extent of the reliance. See *Magna Bank of Madison County v. Jameson*, 237 Ill.App.3d 614, 619 (5th Dist. 1992) (citations omitted).

At best, Plaintiff has shown that she believed that she was receiving general financial advice from Humayun on a one-time basis about various interest rates for CDs including a

recommendation to consider another bank. Summ. J. Order at 22. Any facts that Plaintiff might have discovered had Humayun defended himself could not change that finding, given the burden that Illinois law places on one who seeks to establish the existence of a fiduciary relationship and the factors courts examine in determining if that burden is met. Accepting all of Plaintiff's factual allegations, she cannot demonstrate a fiduciary relationship under Illinois law. The *fait accompli* of a default judgment on this count would plainly conflict with the logic of the Summary Judgment Order in favor of NCB. Plaintiff's "Supplemental Brief on the *Frow* Issue" [95] forthrightly recognizes as much. Mindful that "[t]he result in *Frow* was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability," *In re Uranium*, 617 F.2d at 1257, default judgment against Humayun on Count III is inappropriate.

Because *Frow* bars the entry of a default judgment with respect to Plaintiff's breach of fiduciary duty claim against Humayun, the proper course for this Court is to dismiss that count of the complaint against Humayun. *Frow*, 82 U.S. at 554 ("[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike . . . ."). In any event, even if *Frow* itself were held not to bar the entry of a default judgment, Count III of the complaint still should be dismissed with respect to Humayun because the analysis in this Court's Summary Judgment Order demonstrates that the claim is without merit. See *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999) (district court did not abuse its discretion in denying a motion for appointment of counsel or for default judgment where the "claims were of doubtful merit"); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) (upholding denial of default judgment which was based, in part, on the "disputable merits of [the plaintiff's] claims"); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (refusal to enter default judgment and dismissal not an abuse of discretion where plaintiff's substantive claims

lacked merit); *cf. Duling v. Markun*, 231 F.2d 833, 836 (7th Cir. 1956) ("Whether a default should be entered or a default judgment be set aside, is a matter resting in the sound discretion of the trial judge").

### 4. Damages Against Humayun

The court finds that Plaintiff's prove-up materials, discussed above with respect to Count I, adequately demonstrate that Plaintiff suffered $200,000 in damages; the Court enters a default judgment against Humayun in that amount.

Plaintiff also seeks punitive damages against Humayun, to which she is not entitled. As an initial matter, punitive damages based on a default judgment appear to be the exception rather than the rule in the Seventh Circuit. See, *e.g., Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (vacating an award of punitive damages where the award of $35,000 was "in excess of what is required"). Significantly for present purposes, Illinois law does not allow recovery of punitive damages for ordinary negligence actions. See *Cirincione v. Johnson*, 184 Ill.2d 109, 115-16 (1998) (explaining that punitive damages may be "awarded when torts are committed with fraud, actual malice, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard for the rights of others") (citations and internal quotations and alterations omitted); *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 415-16 (1990) (punitive damages available when the "conduct involve[es] some element of outrage similar to that usually found in crime" and *not for* "*ordinary negligence*") (emphasis added). Moreover, given the large sum for which Humayun will be made liable under the order of default judgment, punitive damages would be inappropriate on the facts of this case. Therefore, Plaintiff's request for punitive damages against Humayun is denied.

**III. Conclusion**

For the aforementioned reasons, and in accordance with the principles outlined above, Plaintiff's motion for default judgment and prove-up [91] is granted in part and denied in part. The Court enters an order of default against Defendants Sheldon Aldridge and Tracy Aldridge and default judgments (i) against Defendants Sheldon Aldridge, Tracy Aldridge, and James Casmay, jointly and severally, on Count I in the amount of $600,000 and (ii) against Defendant Syed Humayun on Count II in the amount of $200,000. The Court declines to award punitive damages against Defendant Humayun and dismisses Count III of the complaint against Humayun.[2] Within fourteen days of the entry of this order, Plaintiff may prove-up any attorneys fees to which she may be entitled under RICO.

Dated: January 29, 2009

Robert M. Dow, Jr.
United States District Judge

---

[2] Whether Plaintiff may recover the full amount of this award from all Defendants, exceeding a total of $600,000 – or whether such a recovery would overcompensate Plaintiff – presents a difficult question on which the Seventh Circuit appears not to have directly opined and on which other courts are divided. See, e.g., *Neibel v. Trans World Assur. Co*, 108 F.3d 1123, 1130-31 (9th Cir. 1997) (holding that a plaintiff could receive treble damages under RICO and punitive damages under state law for the same course of conduct); *Morley v. Cohen*, 888 F.2d 1006, 1012-1013 (4th Cir. 1989) (district court erred in failing to reduce the judgment against one defendant by the amount of a settlement with another defendant because the RICO count was not a "distinct wrong[]" from the state law count); see also generally *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599-600 (2d Cir. 1989) (describing the single satisfaction rule); *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987) ("A tort victim can obtain only one recovery for his harm, no matter how many tortfeasors inflicted it."). The Court declines to address the issue at this time because it has not been briefed and may never be ripe for decision unless Plaintiff is able to collect at least $600,000 from one or more of the defaulted Defendants. If Defendants have concerns that Plaintiff is in position to collect a windfall, Defendants may take any appropriate steps to obtain relief that may be available to them at that time.